**MOBIL EXPLORATION AND PRODUCING NORTH AMERICA, INC., Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 88–4769.

United States Court of Appeals, Fifth Circuit.

Aug. 28, 1989.

Marge O'Connor, Mobil Natural Gas, Inc., Houston, Tex., for petitioner.

Joanne Leveque, Jerome Feit, Sol., F.E.R.C., Washington, D.C., for respondent.

Mickey Jo Lawrence, Ralph J. Pearson, Jr., Houston, Tex., for intervenors Texaco, Inc. and Texaco Producing, Inc.

Michael L. Pate, Tulsa, Okl., for intervenor Oxy USA, Inc.

Before CLARK, Chief Judge, and BROWN and JOHNSON, Circuit Judges.

CLARK, Chief Judge:

Petitioner Mobil Exploration and Producing North America Inc., (MEPNA) and intervenors Texaco Inc. and Texaco Producing Inc., and Oxy USA Inc. (collectively "petitioners") each acquired leasehold interests in certain gas producing property. More than a year after the acquisitions, petitioners filed applications under section 7 of the Natural Gas Act (NGA), 15 U.S.C. § 717f, to succeed to a certificate of public convenience and necessity to sell gas from the property. The Federal Energy Regulatory Commission (FERC) issued the successor certificates, but based on a prior adjudication imposing a one-year filing deadline, FERC ordered petitioners to refund any rate increases collected between the time of acquisition and the time of filing. On petition for review of FERC's order, we affirm in part but vacate the refund requirement because FERC failed to adequately notify petitioners of the one-year time limit for filing.

*Background*

In 1983 and 1984 petitioners acquired leasehold interests in property which was producing natural gas. The assignors of those interests had obtained certificates of public convenience and necessity from FERC to sell the natural gas and had on file rate schedules which governed the price of the gas. When a producer assigns an interest in gas producing property to another, the NGA and applicable regulations require the successor producer to obtain a new certificate of public convenience and necessity. 15 U.S.C. § 717f(c); 18 C.F.R. §§ 2.64(b), 154.92(d). Application

for the new certificate is made by filing the instruments of assignment, a summary of the gas contracts, and a request that the assignor's rate schedule be redesignated as the successor's rate schedule. 18 C.F.R. § 154.92(d). Neither the NGA nor the regulations impose any time limit for making this successor filing.

Prior to 1986, FERC had a policy of issuing certificates to successors even when the required filing was not made until several years after the acquisition. Under this policy, FERC allowed a successor in interest to receive and retain the predecessor's rate including any rate increases collected from the time of transfer to the time the successor filing was made. *See Plaquemines Oil & Gas Co. v. Federal Power Commission*, 450 F.2d 1334 (D.C. Cir.1971).

In 1986 FERC changed its policy and imposed a one-year time limit for making the successor filing in *Tenneco Oil Co.*, 34 F.E.R.C. ¶ 61,143 (Feb. 5, 1986). In *Tenneco*, FERC issued a new certificate and allowed the successor in interest to retain all rate increases collected even though the required successor filing was not made until more than three years after the successor's acquisition of the property. However, the order contained the following passage implementing the new time limit:

> in the future, any applicant filing an application for a successor certificate more than one year after the date of transfer of the properties, absent a showing of good cause for the late filing, will be limited to the rate in effect on the date of transfer of the properties without escalations until the date the application is filed. This policy change does not affect successor applications already on file with the Commission.

34 F.E.R.C. ¶ 61,143 at 61,246.

Several months after the *Tenneco* order, the petitioners filed the applications for successor certificates that are at issue in this appeal. Each of the filings at issue relate to interests acquired by petitioners more than one year prior to the date petitioners made the filings.

On July 7, 1987 the director of FERC's Office of Pipeline and Producer Regulation issued an order granting certificates to petitioners. In accordance with the *Tenneco* order, however, the director required petitioners to refund rate increases collected between the time they acquired the property and the time they filed their applications for successor certificates.

On review of the director's order, FERC waived the *Tenneco* one-year filing requirement for a period of ninety (90) days following *Tenneco*. Petitioner's filings at issue in this appeal were not made within the 90–day waiver period, and were made more than one year after the effective date of the property transfer. Accordingly, FERC applied the *Tenneco* policy and required the petitioners to refund any rate increases collected between the time of transfer and the time of filing. 44 F.E.R.C. ¶ 61,100 (July 21, 1988). FERC denied rehearing, 44 F.E.R.C. ¶ 61,351 (Sept. 21, 1988), and petitioners seek review of FERC's orders.

### Substantive Issues

■ Petitioners challenge the merits of FERC's decision to impose a one-year filing deadline and grant a 90–day waiver period following *Tenneco*. They correctly assert that FERC must provide a reasoned explanation to substantiate a change in policy. *See Florida Gas Transmission Co. v. FERC*, 876 F.2d 42 (5th Cir.1989). However, that explanation is not to be reversed unless it is arbitrary, capricious, or otherwise not in accordance with law. 5 U.S.C. § 706(2).

■ Petitioners also argue that FERC has not adequately explained its reasons either for the change in policy or for the 90–day waiver. We do not agree. FERC explained that in the absence of a deadline it must ignore or excuse sales by successors that are in violation of the NGA, and that its records remain inaccurate for lengthy periods of time. FERC further explained that the one-year time limit is consistent with 18 C.F.R. § 2.64(a), which provides that an assignor of non-producing property must obtain abandonment authorization from FERC unless the successor in

interest files an application for certificate authorization within one year from the date of the assignment. FERC explained that the 90–day waiver period following *Tenneco* provides 30 days for rehearing in *Tenneco,* 30 days for any FERC action on rehearing, and 30 days for successors to prepare and make the required filing. This reasoning supports FERC's decisions to impose a one-year time limit for making successor filings and to grant a 90–day grace period following *Tenneco.* Neither is arbitrary or capricious.

■ Petitioners also argue that FERC impermissibly applied the change in policy retroactively. The *Tenneco* order on its face, however, only applies to future applicants who make late filings. FERC specifically exempted from the new policy the producer in *Tenneco* and other producers with applications on file at the time of the *Tenneco* order. Furthermore, in the instant case FERC granted an additional 90 days from the *Tenneco* order within which producers could make the successor filing and thus escape any retroactive application. The new policy does have a retroactive effect to the extent successors in interest make late filings after the 90–day grace period and are required to refund rate increases collected prior to *Tenneco.* Problems of retroactivity are resolved on the basis of balancing considerations of fairness and the necessities of practical administration. *Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 985 n. 30 (5th Cir.1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978). The necessities of practical administration outweigh any considerations of unfairness with regard to those producers who had actual notice of *Tenneco.* Different fairness considerations apply to those producers who did not have adequate notice of *Tenneco.* In light of our ruling on the notice issue, however, we need not address the retroactive effect of the filing deadline as to those without actual notice of *Tenneco.*

■ Petitioners also argue that by allowing late filing successors to collect their predecessor's base rate, but not any rate increases between the time of transfer and the time of filing, FERC has misapplied the "filed rate doctrine." The filed rate doctrine provides that a natural gas company "can claim no rate as a legal right other than the filed rate." *Montana–Dakota Utilities Co. v. Northwestern Public Service Co.,* 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951). Petitioners assert that prior to a successor filing the successor is entitled to receive the rates under the predecessor's filed rate schedule. According to petitioners, rate increases under the predecessor's rate schedule cannot be separated from the rate in effect on the date of transfer. Therefore, petitioners contend that successors in interest should be entitled to receive the rates under their predecessor's rate schedules, including rate increases.

FERC initially contends that we should not reach this issue because petitioner MEPNA failed to raise it in its petition for rehearing before FERC. However, MEPNA's petition for rehearing did include an argument that the rate schedule of the predecessor covers the sales of the successor in interest until a new certificate is issued. FERC addressed this issue in its order denying rehearing, and it is presented to us without objection in MEPNA's docketing statement. We have jurisdiction to address the argument.

In its order implementing section 7(c) of the NGA and the regulations FERC interpreted that section to mean that until a successor in interest files its own rate schedule and receives its own certificate of public convenience and necessity, it has no rates on file. FERC explained that the predecessor's rate schedules on file do not satisfy the successor's obligation to file its own rate schedules. Furthermore, FERC noted that while gas leases and contracts are freely assignable, FERC certificates are not. According to FERC's interpretation, sales of natural gas made by the successor between the time of acquisition and the issuance of a successor certificate are in technical violation of the NGA. FERC's interpretation of its own regulations is entitled to great deference. *Penn-*

*zoil Co. v. FERC,* 645 F.2d 360, 383 (5th Cir.1981), *cert. denied,* 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982). We accept FERC's interpretation because it is neither plainly erroneous, clearly unreasonable, nor inconsistent with the NGA. *See id.*

Under this interpretation, there is no misapplication of the filed rate doctrine. Although the successor's sales made prior to receiving a successor certificate are in technical violation of the NGA and the filed rate doctrine, FERC can properly exercise its equitable powers to make the successor filing relate back to the time of transfer. *Plaquemines,* 450 F.2d 1334. FERC has chosen to do so in cases where the successor makes the necessary filings within one year of the acquisition. In cases where the successor makes a filing more than one year after the acquisition, FERC does not allow the filing to relate back to the time of transfer. The late filing successor therefore has no rate on file between the time of transfer and the successor's own filing. To prevent injustice FERC allows the late filing successor to collect, between the time of transfer and the filing date, the rate in effect on the date of transfer. Neither the rule covering timely nor that covering late filing results in a separation of the predecessor's rates into a base rate and rate increases. In both instances it is the successor's rate that is the subject of FERC's equitable powers. FERC has not misapplied the filed rate doctrine.

■ Petitioners also assert that requiring a refund of rate increases collected between the time of acquisition and the time of filing amounts to a penalty for late filing. Again, FERC asserts that this argument is not properly presented for our review because petitioner MEPNA failed to raise it in its petition for rehearing. However, MEPNA's petition for rehearing specifically argued that the new policy "cannot be applied to penalize MEPNA for its past behavior." We conclude that this issue was adequately presented to FERC, and we have jurisdiction to address it.

As FERC explained in its order, the refund requirement for late filers is merely a result of FERC's refusal to exercise its equitable power to relate the late filing back to the time of transfer. By disallowing any increases from the time of transfer, FERC returns the successor in interest to the status in effect on the date of transfer. Returning the parties to the status in effect prior to the NGA violation does not amount to a penalty. *See Cox v. FERC,* 581 F.2d 449 (5th Cir.1978); *Mesa Petroleum Co. v. Federal Power Commission,* 441 F.2d 182 (5th Cir.1971). The refund requirement for late filing successors is equitable, reasonable, and within the authority of FERC.

### Procedural Issues

■ Petitioners also attack FERC's orders on procedural grounds. They argue that FERC should have instituted the one-year time limit in a formal rulemaking procedure under the Administrative Procedure Act, 5 U.S.C. § 551 et seq. However, FERC may establish rules of general application in either a statutory rulemaking procedure or an individual adjudication. *Shell Oil Co. v. FERC,* 707 F.2d 230, 235 (5th Cir.1983) (citing *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974)). Adjudication can be used to announce new principles even if the principles involve a change from past policies. *Bell Aerospace,* 94 S.Ct. at 1770–72. The choice of methods is a matter within FERC's informed discretion. *Id.* at 1771.

FERC provided the following reasoning for its decision to establish the one-year time limit in an adjudicatory proceeding rather than through a statutory rulemaking procedure:

> While rulemaking procedures generally should be used to promulgate broadly applicable new policies that significantly alter existing understandings in a regulated industry, such proceedings may be costly and time consuming, and cannot be justified in situations such as this, where a new policy articulation is warranted, but amounts to nothing more than an adjustment to existing policies. The policy only affects large producers, since small producers have blanket certif-

icates that do not require amendment for successors to producing properties and are exempt from the requirement to maintain rate schedules.

44 FERC ¶ 61,351.

According to FERC there are fewer than 250 large producers that would be subject to the one-year successor filing requirement. The new time limit is a relatively minor procedural requirement with limited effect. While rulemaking would provide FERC with a forum for soliciting the informed views of these affected in the industry, FERC could appropriately decide that an adjudicatory proceeding would produce the relevant information necessary to fair consideration of the new rule, *Bell Aerospace*, 94 S.Ct. at 1772, and that the notice and comment procedures required for formal rulemaking were impracticable and unnecessary. *See* 5 U.S.C. § 553(b)(3). We hold that FERC did not abuse its discretion in establishing the one-year time limit in an adjudication rather than through a statutory rulemaking procedure.

■ While FERC may choose to establish new principles in either a rulemaking or an adjudication, due process must be satisfied in each case. *Florida Gas*, 876 F.2d at 44. When a rule is established through statutory rulemaking, public notice and hearing provide the necessary protection. *Id.* Such notice is provided by publication of the proposed rulemaking in the Federal Register, and all parties who will be affected by the rule are given an opportunity to challenge FERC's action. *See* 5 U.S.C. § 553. Similarly, when a new principle is established in individual adjudication, due process requires that affected parties be allowed to challenge the basis of the rule. *Shell Oil*, 707 F.2d at 235–36. Due process further requires that FERC provide notice which is reasonably calculated to inform all those whose legally protected interests may be affected by the new principle. *North Alabama Express, Inc. v. United States*, 585 F.2d 783, 786 (5th Cir.1978).

■ FERC argues that publication of the new time limit in the official FERC reporter printed by Commerce Clearing House

constituted sufficient notice to affected producers. The new time limit was an issue of first impression. It had broad application, and changed established policy. FERC's decision to make the policy change in a two-sentence explanation embedded in the otherwise routine *Tenneco* order did not provide reasonable notice to non-parties of the new policy.

The *Tenneco* order appears on its face to be simply one of many orders that FERC issues daily which grant certificates of public convenience and necessity to individual producers. The heading of the order contains no reference to the new time limit. Likewise, the four paragraphs at the end of *Tenneco* which set forth FERC's specific orders do not contain any reference to the one-year time limit. Counsel advises that the *Tenneco* order was voted on at a FERC public meeting, but that it was one of approximately 75 orders on a consent agenda that were approved without discussion. FERC practice is to place all approved orders on a public bulletin board at FERC's offices. The bulletin board is covered with glass so only the first page of the orders can be seen. Often because of the number of orders placed on display, the orders are overlapped so that only the heading can be seen. While the orders on the bulletin board can be reviewed upon request, there must be something about the order that catches the attention of those affected to justify such a request. The *Tenneco* order was not published in the Federal Register. This form of official notice would have provided constructive notice to nonparties and would have alerted them to the fact that this was an order which required attention. Instead, it was published in a commercial reporting service along with volumes of other routine FERC orders. Counsel for MEPNA stated that on a weekly basis she and five other attorneys at MEPNA each review stacks of such FERC orders. There was nothing in the heading or the ordering paragraphs of the *Tenneco* order to signal the reviewer that the order changed established policy or imposed a new time limit for making successor filings. To add to the potential for obscurity,

200

the one year time limit was made inapplicable to the producer in *Tenneco*, taking away any incentive for that producer to challenge the new time limit. Under these circumstances, we conclude that FERC has failed to provide actual or constructive notice reasonably calculated to inform petitioners of the one-year time limit. Accordingly, that part of FERC's order applying the new policy to petitioners and requiring them to refund rate increases collected between the time of transfer and the date of filing is vacated.

### Conclusion

That portion of FERC's orders sought to be reviewed which requires successors in interest to make a successor filing within one year of the effective date of the transfer and provides for a 90-day waiver period following the *Tenneco* order is AFFIRMED. That portion of the orders requiring refunds of petitioners who had no actual or constructive notice of the one year time limit is VACATED.