**RAVENSWOOD HOSPITAL MEDICAL CENTER, Chicago, Illinois, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary Department of Health and Human Services; and the Department of Health and Human Services, Defendants.**

No. 82C4872.

United States District Court, N.D. Illinois, E.D.

May 8, 1985.

---

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Plaintiff Ravenswood Hospital Medical Center ("Ravenswood") brought this action pursuant to the Medicare program (Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*) to review a final decision of the Secretary of the Department of Health and Human Services ("HHS"). The Secretary found that certain costs claimed by Ravenswood were not allowable costs for reimbursement by the Medicare program. Jurisdiction in this Court vests under 42 U.S.C. § 1395oo(f). Presently pending before this Court are the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56.[1] No material dispute of fact exists.

Ravenswood is a 438 bed general, acute care hospital in Chicago servicing the general population of the City and Medicare beneficiaries. Ravenswood alleges that it was not paid the full amount due for services rendered to Medicare beneficiaries in the fiscal years 1977, 1978, and 1979 because of the Secretary's determination that certain costs incurred by Ravenswood were not allowable costs under the Medicare program. After a several step review process, those costs which were finally disallowed by the Deputy Administrator, acting as the Secretary's delegate, of HHS's Health Care Financing Administration are as follows:

1. *Telephone Expenses.* All costs related to patient bedside telephone services were disallowed as personal comfort items.

2. *Hill Burton Costs.* Costs associated with providing free and below-cost services pursuant to the obligations of hospitals receiving federal funding under the Hill-Burton Act, 42 U.S.C. § 291, *et seq.*, were disallowed.

3. *Return on Equity Capital.* No allowance was made for return on equity capital.

4. *Labor/Delivery Room Days.* The Administrator ruled that, for purposes of allocating costs to Medicare patients, patients in the labor delivery room at midnight of a given day be included in the total number of inpatient stay days.

5. *Debt Service Fund Interest Offset.* The Administrator ruled that, although interest income on the fund was not required to be offset, interest payed on amounts deposited in the fund should be disallowed.

6. *Capitalization of Interest.* The Administrator ruled that Ravenswood must capitalize, rather than expense, interest costs incurred during the period in which construction was in progress and until the facilities were put into use.

7. *Advance Refunding Loss.* The Administrator disallowed the full costs of the loss in the year incurred and required Ravenswood to amortize the loss over 23 years.

8. *Bad Debt Allowance.* The Administrator refused to allow certain contractual bad debt allowances claimed by Ravenswood in computing reimbursable physician's service expense.

Ravenswood filed its complaint for judicial review of the Secretary's decision pursuant to 42 U.S.C. § 1395oo(f) on August 6, 1982. The complaint is framed in eight counts which match the description of disallowed costs set forth above. The prayer for relief of each count requests that the

---

1. Ravenswood actually filed a motion for partial summary judgment on February 23, 1983, stating that review of certain issues had been stayed pending resolution of certain cases then pending in the Seventh Circuit. Those cases have since been decided by the Seventh Circuit. Accordingly, this Court will now treat the presently pending motions as cross motions for full summary judgment.

disallowed cost at issue be allowed, that judgment for that amount plus interest be entered, and requests such further relief as the court deems appropriate. Each count of the complaint is considered separately below under the standard of review set forth in 5 U.S.C. § 706 (1978) of the Administrative Procedure Act.

*Count I—Telephone Expenses*

■ In Count I of the complaint, Ravenswood requests that judgment for $96,800, representing the Medicare reimbursement disallowed for patient telephone service, plus interest, be entered in its favor. Ravenswood argues that because bedside telephones for patients have therapeutic value, costs for such telephone service qualify for Medicare reimbursement under 42 U.S.C. § 1395x(v)(1)(A) and 42 C.F.R. § 405.451. Ravenswood's argument that it is entitled to reimbursement for these telephone costs is foreclosed by the decision of the Seventh Circuit in *Saint Mary of Nazareth Hospital Center v. Department of Health and Human Services*, 698 F.2d 1337, 1347 (7th Cir.1983), in which the court held:

> The Secretary's regulation banning the reimbursement of the cost of a telephone used for a Medicare patient's personal comfort is clearly authorized by 42 U.S.C. § 1395y(a)(6).... [W]e hold that the cost of providing a Medicare patient with a bedside telephone is not a reimbursable cost under the Medicare program.

Accordingly, the Secretary's decision denying Medicare reimbursement to Ravenswood for bedside patient telephone costs is affirmed, and the Secretary is hereby granted summary judgment dismissing Count I of the complaint.

*Count II—Hill-Burton Costs*

■ In Count II, Ravenswood seeks the amount of $208,100 plus interest for disallowance of costs associated with provision of uncompensated care pursuant to the Hill-Burton program, 42 U.S.C. § 291, *et seq.* Again, Ravenswood's argument that it is entitled to reimbursement for such costs is foreclosed by the Seventh Circuit's decision in *Saint Mary of Nazareth Hospi-*

*tal Center, supra.* The court held that such costs were not reimbursable under the Medicare program, stating:

> The Hill-Burton Act was designed to promote the construction and modernization of hospitals, and as a *quid pro quo* for the receipt of Hill-Burton funds, participating hospitals agreed to provide a percentage of charity care to local indigents. The Medicare Act, on the other hand, was adopted only to provide medical care for the disabled and the aged who qualify as Medicare beneficiaries.
>
> It was Congress' intent that these two programs remain separate and apart from each other and that hospitals should not be reimbursed by one program (Medicare) for the care they provide in fulfillment of the other, their Hill-Burton obligations. (emphasis in original.)

698 F.2d at 1343. Accordingly, the Secretary's decision disallowing Medicare reimbursement for Ravenswood's Hill-Burton costs is affirmed, and summary judgment dismissing Count II of the complaint is granted.

*Count III—Return on Equity Capital*

■ In Count III, Ravenswood requests judgment in the amount of $4,111,827, plus interest, as reimbursement for an allowance for return on equity capital. In *St. Francis Hospital Center, et al. v. Heckler*, 714 F.2d 872 (7th Cir.1983), the Secretary's decision that not-for-profit providers are not entitled to Medicare reimbursement for a return on equity capital was upheld. Accordingly, the Secretary's decision disallowing Ravenswood's claim for Medicare reimbursement for a return on equity capital is affirmed, and summary judgment dismissing Count III of the complaint is granted.

*Count IV—Accounting for Labor/Delivery Room Days*

■ In Count IV, Ravenswood seeks judgment in the amount of $32,300, plus interest, which represents the Medicare reimbursement disallowed by including labor/delivery room patients in the calcula-

tion of total inpatient days. The issue presented here is identical to that presented in a case recently decided by the Seventh Circuit, *Central DuPage Hospital, et al. v. Heckler,* 761 F.2d 354 (7th Cir.1985). The court in that case framed the issue as "whether the Secretary's policy of counting any patient who is in the labor/delivery area at the midnight census as having had a full day of routine care is irrational." At 357. The Seventh Circuit answered the question by following the decision of four other Courts of Appeal holding that "it is irrational to count patients in the labor/delivery area at the census-taking hour of midnight as having had a full day of routine care if in fact they have had no routine care on that day, unless it can be shown that the reimbursement lost to the hospitals as a result of this policy is offset by excess reimbursement attributable to some other factor in the Medicare reimbursement formula as applied to the hospitals in questions." At 357 (footnote omitted). The court remanded the cases to the Provider Reimbursement Review Board ("PRRB") "for the purpose of enabling the Secretary to adduce evidence before the PRRB that the dilution of the hospitals' Medicare reimbursement is offset by other factors in the Medicare system." At 359.

In this case, the Secretary has not requested a remand to the PRRB. The cross-motions for summary judgment were fully briefed, however, before the Seventh Circuit rendered its decision in *Central DuPage Hospital, supra.* Accordingly, summary judgment is granted to *Ravenswood* on Count IV of the complaint in the amount of $32,300 plus interest. Pursuant to Fed. R.Civ.P. 59, however, the Secretary is granted 10 days within which to request a remand to the PRRB for purposes of adducing further evidence. If the Secretary so requests, the Court will vacate its judgment on Count IV and remand for further proceedings.

*Count V—Debt Service Fund Interest Offset*

■ In 1976 and 1978, Ravenswood issued revenue bonds through the Illinois Health Facilities Authority. As part of each financing, Ravenswood agreed to establish a Debt Service Reserve Fund ("DSRF") as additional security to the lender in an amount sufficient to pay the maximum interest and principal payable in any one year. The intermediary, reasoning that the fund did not qualify as a funded depreciation account under 42 C.F.R. § 405.419, adjusted Ravenswood's cost reports and required that the interest income from the DSRF fund be offset against interest expense. The PRRB reversed and found that the fund properly was treated as a funded depreciation account. Accordingly, the interest income earned was protected from offset to reduce interest expense. Nonetheless, the PRRB disallowed the interest paid on money borrowed to establish the DSRF, citing section 226.5 of the Provider Reimbursement Manual, and that decision was upheld by the Secretary. In Count V of the complaint, Ravenswood challenges the disallowance by the Secretary of interest expense incurred in connection with its DSRF.

This Court finds the reasoning of the First Circuit in *Cheshire Hospital v. New-Hampshire-Vermont Hospitalization Service,* 689 F.2d 1112 (1st Cir.1982), to be persuasive. The court held that the anti-borrowing rule set forth in 42 C.F.R. § 405.419 and in Provider Reimbursement Manual § 226.5 is consistent with the statute and regulations, stating:

This second anti-borrowing rule also appears to be consistent with the language and purpose of the Medicare regulations. 42 C.F.R. § 405.419(b)(2)(i) states that loans which result in investments are not considered necessary for Medicare purposes, and the interest paid on such loans is therefore not a reimbursable cost. Since funded depreciation accounts may be reasonably considered as investments, albeit investments with the limited purpose of replacing depreciable assets, a rule which disallows interest reimbursement on loans used to finance these accounts would appear to be a reasonable interpretation of the regulation. Moreover, application of this second anti-

borrowing rule would serve the regulations' purpose of discouraging borrowing for funded depreciation as readily as the anti-borrowing rule applied in *Albany Medical Center* and the case at bar. *Id.* at 1125–26. *See also Metropolitan Hospital v. Department of Health and Human Services,* Civil No. 82–0796 (E.D.Pa. July 11, 1983). Finally, the Seventh Circuit once again has recently decided a case that poses the identical issue presented here, *Memorial Hospital of Carbondale, et al. v. Heckler,* 760 F.2d 771 (7th Cir.1985). In that case, the court extensively analyzed the First Circuit's decision in *Cheshire Hospital, supra,* adopted its reasoning, and affirmed the finding that "it was not arbitrary, capricious, or an abuse of discretion for the Secretary to apply the interest disallowance rule to the hospitals' bond reserve fund." At 783. Accordingly, the Secretary's decision is affirmed, and summary judgment is granted dismissing Count V of the complaint.

*Count VI—Capitalization of Interest*

■ Ravenswood borrowed $29.75 million through a 1976 bond issue, most of which funded a 1976 project to construct and equip the Ambulatory Care Center, the Special Care Pavilion, and certain floors of the hospital's East Building. Ravenswood treated the interest expense as a current period expense. The fiscal intermediary, however, capitalized the interest expense in accordance with Section 206 of the Provider Reimbursement Manual, and this decision was ultimately upheld by the Deputy Administrator on behalf of the Secretary. In Count VI of the complaint, Ravenswood requests judgment in the amount of $632,500 plus interest, which represents Medicare reimbursement disallowed the hospital through capitalizing as opposed to currently expensing interest expenses during construction in process.

Ravenswood argues that the costs for which it seeks reimbursement were incurred during the period at issue in this case and thus should be included in its costs during that period under 42 C.F.R. §§ 405.451, 405.402(a), and 405.406(a).

Ravenswood contends that it could not have continued to provide patient care services and kept its license and certification unless the construction had been in progress, thereby justifying the costs to current users, including Medicare patients. In response, the Secretary contends that the record in this case disproves Ravenswood's assertion that the construction was primarily replacement remodelling related to current patient care as opposed to new construction for future patients.

After reviewing the record, this Court finds that substantial evidence exists that in constructing and equipping the Ambulatory Care Center and the Special Care Pavilion, Ravenswood was constructing a new facility. Section 206 of the Provider Reimbursement Manual provides:

Frequently, providers may borrow funds to construct facilities or to enlarge existing facilities. Usually, construction of facilities will extend over a long period of time, during which interest costs on the loan are incurred. Interest costs incurred during the period of construction must be capitalized as a part of the cost of the facility. The period of construction is considered to extend to the date the facility is put into use for patient care.

If the construction is an addition to an existing facility, interest incurred during the construction period on funds borrowed to construct the addition must be capitalized as a cost of the addition. After the construction period, interest on the loan is allowable as an operating cost.

Where a bond issue is involved, any bond discount and expense, or bond premium amortized during the period of construction is included in the capitalized cost of facility constructed. R. at 789–790.

Several courts have held that until the construction of a hospital facility is completed and used for patient care, costs attributable to the unfinished facility are unrelated to the care of Medicare beneficiaries during that period and thus are not reimbursable as an immediate current ex-

pense rather than as a cost capitalized over the period of the life of the addition. *St. Francis Memorial Hospital v. United States,* 648 F.2d 1305, 227 Ct.Cl. 307 (1981); *Good Samaritan Hospital v. Mathews,* 609 F.2d 949 (9th Cir.1979); *St. Anthony's Hospital v. Schweiker,* No. 77–5078, Medicare & Medicaid Guide (CCH) ¶ 32,078 (S.D. Ill., June 6, 1982); *Alton Memorial Hospital v. Schweiker,* No. 79–5076, Medicare and Medicaid Guide (CCH) ¶ 32,077 (S.D. Ill., Sept. 3, 1981). Although Ravenswood argues that the court in *Alton Memorial Hospital, supra,* erred in granting "considerable deference" to the Manual, the Supreme Court has directed lower courts to accord "considerable respect" to an agency's interpretation of statutes it must administer. *Ford Motor Credit v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). In addition, Ravenswood's argument that expensing interest cost as a current cost is consistent with generally accepted accounting principles is answered by the Secretary's assertion that capitalization is also a generally accepted accounting method, and the Secretary is not required "to use a particular accounting method whether acceptable in other contexts or not." *Alton Memorial Hospital, supra* at p. 10,163.

Accordingly, the Secretary's decision affirming the intermediary's adjustment to capitalize construction interest costs is affirmed, and summary judgment dismissing Count VI of the complaint is granted.

*Count VII—Amortization of Loss Attributable to Advance Refunding of Debt*

▮ In June, 1978, Ravenswood issued Series 1978 Bonds to advance refund its Series 1976 Bonds. The Series 1976 Bonds were thus paid off, and Ravenswood incurred a loss through this advance refunding, including the prepayment of interest. Ravenswood reported the loss in 1978, the year it was incurred. The Secretary, however, required Ravenswood to amortize the loss over the life of the refunded bonds pursuant to Section 215.1 of the Provider Reimbursement Manual. In Count VII of its complaint, Ravenswood urges this Court

to reverse the Secretary's decision as arbitrary and capricious, hold that this Manual provision is contrary to the Medicare reimbursement regulations, 42 C.F.R. §§ 405.-402, 405.406, and 405.453, and enter judgment in its favor in the amount of $570,000 plus interest.

Ravenswood contends that the Secretary's decision contravenes the Medicare Act and regulations. Under 42 C.F.R. § 405.406(a), the Secretary must grant credence to generally accepted accounting principles, under which a loss on advance refunding is reported in the year in which it is incurred and is not amortized. Section 405.453 requires that under the accrual basis of accounting a loss on advance refunding is recognized when incurred, and Section 405.402 requires that payment be based on current costs.

The Secretary concedes that under generally accepted accounting principles, a loss on advance refunding is incurred in the period in which it is defeased. The Secretary argues nonetheless that 42 C.F.R. § 405.406(a) does not require that generally accepted accounting principles be followed when applying such principles is contrary to the purpose of the Medicare program. Although courts have recognized that 42 C.F.R. § 405.406 may not be construed to require the Secretary to use a particular accounting method if it is inconsistent with Medicare reasonable cost principles, the Secretary's insistence that amortization is necessary to match current costs of providing services to beneficiaries with services as they are rendered leads to inconsistencies which are irrational. As Ravenswood points out in its reply brief in this Court:

A loss must be amortized so that the costs are matched to beneficiaries who receive services during the years over which the refinancing extends. The Secretary treats gain differently, however. If there is a gain on advance refunding, the Secretary does not require a matching of costs to services. Under this approach, if it reduces Medicare costs, it must be reported in one year. If, however, it increases the hospital's Medicare

costs, it must be spread out over 20 years.

The manual also includes an exception if the debt cancellation costs are less than 50% of the amount of interest cost and amortization expense that would have been allowed had the indebtedness not been cancelled. In other words, a hospital may claim a loss on advance refunding in the year in which it is incurred as long as the loss is not too large. If, however, the 50% threshold is exceeded, then the amortization requirement is applicable. Therefore, if hospitals are under this threshold, the costs are related to services currently being rendered to beneficiaries. Only if the threshold is exceeded do the costs somehow relate to other beneficiaries in other years.

(Reply Memorandum In Support of Plaintiff's Motion For Summary Judgment, at 18; footnote omitted.) Moreover, the call premium and refinancing expenses were paid and the loss was incurred in the year of refunding.

This Court agrees with the statement of the Provider Reimbursement Review Board on this issue that:

> In reviewing the facts related to this issue, the most apparent aspect is the inconsistent position in dealing with this matter.
>
> The Medicare program's basic criteria, when considering the allowability of interest expense, are whether the expense is reasonable and necessary. Therefore, applying Section 1861(v)(1)(A) of the Act and Section 405.419 of the Regulations, the program should consider this expense as reimbursable in the year incurred. GAAP [generally accepted accounting principles] supports this treatment.... Furthermore, the exception contained in Section 215.1 ... is arbitrary and not supported by regulation. The Provider is entitled to take the full loss in the year incurred.

Accordingly, this Court holds that the Secretary's decision on this issue is arbitrary and capricious, and Ravenswood is granted summary judgment in the amount of $570,-000 plus interest on Count VII of the complaint.

*Count VIII—Exclusion of Bad Debt Allowance*

■ Ravenswood entered into contracts for services in its hospital with a pathologist and with a radiology group. The difference between adjusted gross revenue and gross revenue was identified by Ravenswood as "bad debt allowance." The intermediary disallowed the "bad debt allowance," reducing Medicare reimbursement by $86,000. In Count VIII of the complaint, Ravenswood seeks judgment in the amount of $80,000 plus interest or a remand to the PRRB to produce further evidence to substantiate Ravenswood's actual bad debt experience.

This Court finds that the decision of the Board affirming the intermediary's disallowance is based on substantial evidence because Ravenswood did not present any specific evidence of bad debts for radiology and pathology aside from its concession that there were no bad debts for Medicare patients. Despite the fact that the Medicare Act prohibits payment for other than net costs to the provider, Ravenswood tried to increase its revenues from Medicare by including anticipated bad debts and charity even though these payments admittedly were never made to those physicians. Even if Ravenswood actually had the bad debts and charity patients, Ravenswood failed to provide any evidence to that effect. Accordingly, the Secretary's decision allowing only costs actually incurred for radiologists and the pathologist is consistent with the Act and its regulations and is supported by substantial evidence, and summary judgment dismissing Count VIII of the complaint is granted.

It is so ordered.