851 F.2d 291
 22 Soc.Sec.Rep.Ser. 317, Medicare&Medicaid Gu 37,202
NATIONAL MEDICAL ENTERPRISES, et al., Plaintiffs-Appellees,
v.
Otis R. BOWEN, M.D., Secretary of Department of Health and
Human Services, Defendant-Appellant.
 No. 87-5605.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1987.
Decided July 11, 1988.
 
 Robert K. Rasmussen, Dept. of Justice, Washington, D.C., for defendant-appellant.
 Patric Hooper, Hooper, Lundy & Bookman, Inc., Los Angeles, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before ALARCON, NELSON and REINHARDT, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 Under the Medicare Act, 42 U.S.C. Sec. 1395 et seq., hospitals are reimbursed for the reasonable costs of the services they provide for medicare patients. Until recently, for-profit hospitals received return on equity capital as part of the calculation of their reasonable costs under the Act. This case involves a dispute over how the return-on-equity payments should be calculated.
 
 
 2
 Twelve hospital-subsidiaries of National Medical Enterprises, Inc. ("NME") included return-on-equity capital in their year-end cost reports. The Medicare fiscal intermediary required NME to remove that item from their ending equity capital for the cost-reporting periods of the 1974-1979 fiscal years. NME appealed the intermediary's decision to the Provider Reimbursement Review Board ("PRRB"). Following an evidentiary hearing, the PRRB reversed the intermediary's decision. The Secretary of Health and Human Services reversed the PRRB's decision, thus upholding the intermediary's adjustment.
 
 
 3
 NME appealed the Secretary's decision to the United States District Court for the Central District of California. In response to the parties' cross-motions for summary judgment, the court granted NME's motion for summary judgment, 662 F.Supp. 476. It concluded that the Secretary's decision was contrary to the relevant federal regulations. The Secretary filed a notice of appeal in this court. We affirm.
 
 I.
 
 4
 Hospitals that treat Medicare patients are reimbursed either the reasonable costs of such services or the customary charges for such services, whichever is less. 42 U.S.C.A. Sec. 1395f(b)(1) (1983). For hospitals operated for a profit, "reasonable costs" "shall include provision for specific recognition of a reasonable return on equity capital." 42 U.S.C.A. Sec. 1395x(v)(1)(B) (Supp.1987).[1]
 
 
 5
 Return-on-equity capital, an "amount allowable on an annual basis," is determined by multiplying the hospital's equity capital by a percentage set according to a formula in the regulations. 42 C.F.R. Sec. 413.157(a)(ii) (1986). "For purposes of computing the allowable return, the amount of equity capital is the average investment during the reporting period." Id. Sec. 413.157(b)(ii)(4).
 
 
 6
 The hospitals receive interim payments, see 42 U.S.C.A. Sec. 1395g(a) (1983); 42 C.F.R. Sec. 413.64(b), (i), twice a month in order to avoid cash-flow problems. These interim payments are approximations of the payments actually due the hospitals. Return-on-equity payments are included in these payments. At the end of the year, money is paid to or returned by the hospitals to reflect the difference between the estimated reimbursement paid and the actual reimbursement due. 42 U.S.C.A. Sec. 1395g; 42 C.F.R. Sec. 413.64(f).
 
 
 7
 When hospitals report their cost data they must use the accrual basis of accounting. 42 C.F.R. Sec. 413.24(a). "Under the accrual basis of accounting, revenue is reported in the period when it is earned, regardless of when it is collected, and expenses are reported in the period in which they are incurred, regardless of when they are paid." Id. Sec. 413.24(b)(2). Nothing in the statutes or the regulations discusses in what period hospitals' return-on-equity payments should be reported.
 
 
 8
 The dispute between NME and the Secretary appears to involve only whether the return-on-equity payments earned should be calculated as part of the hospitals' ending equity capital for a given fiscal year (NME's position) or whether those payments should not be calculated until day one of the next fiscal year (the Secretary's position). This apparently insignificant difference has substantial financial implications. A hospital's ending equity capital is an important component in calculating that hospital's average equity capital for a given fiscal year. The average equity, in turn, is the basis for calculating how much return on equity is due each hospital. Thus, whether the hospitals are allowed to include particular sums in their ending equity calculation or not can greatly affect how much money they receive under the Medicare Act. In the present case, the difference between the Secretary's method of calculation and NME's method resulted over the six years involved in an aggregate difference of $298,000.
 
 II.
 
 9
 For his interpretation of the relevant regulations, the Secretary depends on sections from two parts of the Providers Reimbursement Manual. We have described the legal status of the Manual as follows: "The Manual is a guide for intermediaries in applying the Medicare statute and reimbursement regulations and does not have the binding effect of law or regulation," Phoenix Baptist Hospital & Medical Center, Inc. v. Heckler, 767 F.2d 1304, 1307 (9th Cir.1985); "the manual does not implement new substantive policy, but rather provides optional guidelines clarifying existing regulations," John Muir Memorial Hospital, Inc. v. Schweiker, 664 F.2d 1337, 1339 (9th Cir.1981).
 
 
 10
 The Secretary points out that part II of the Manual speaks directly to the issue: section 385.1 instructs intermediaries to exclude return on equity from the computation of ending equity capital, but to include it in the computation of the beginning equity capital for the next year.[2] However, a former Medicare reimbursement policy-maker who testified before the PRRB testified that part II of the Manual was never intended to establish Medicare policy. New policies were properly promulgated through regulations, and occasionally through part I of the Manual. Part II is only an instruction form to help intermediaries fill out Medicare reimbursement forms. The Secretary does not contest this characterization, which is consistent with this court's past descriptions of the Manual. As part II requires no particular deference, we must determine only whether the Secretary's interpretation of the Medicare Act reimbursement provisions is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A). A regulation has the force of law; therefore, an agency's interpretation of a statute in a manner inconsistent with a regulation will not be enforced. Id.
 
 
 11
 NME argues that the Secretary's interpretation of the Medicare Act, as elaborated in the Manual sections, is invalid as contrary to the Medicare regulations. In particular, the Secretary's position is asserted to be contrary to the regulation which requires hospitals to follow accrual accounting procedures, 42 C.F.R. Sec. 413.24.[3]
 
 
 12
 For-profit hospitals earn return on equity as part of their costs when these hospitals provide services to Medicare patients. Thus, return on equity is earned in the current cost-reporting period and, according to the principles of accrual accounting, should be reported in that period. See 42 C.F.R. Sec. 413.24(b)(2). Also, in part I of the Manual, section 1220 states: "the provider is not required to maintain his records on a full accrual accounting basis at any time except at the end of the reporting year." (emphasis added)
 
 
 13
 The Secretary admits that as a matter of generally accepted accounting principles concerning accrual accounting, the return-on-equity capital should be included in the ending equity capital. He further admits that his regulations require hospitals to use the accrual accounting system. He argues that return on equity should nontheless not be considered as part of ending equity capital for the purpose of calculating Medicare reimbursements. His first contention is that principles of accounting are not relevant to determine whether his interpretation of the Medicare reimbursement provisions is reasonable. We disagree. Regulations regarding how hospitals should calculate and record their costs are integral parts of the set of Medicare regulations regarding what is a "reasonable" (reimbursable) cost for the purpose of the Act. See, e.g., 42 C.F.R. Secs. 413.24(a), 413.24(b)(2). Cf. Villa View Community Hospital, Inc. v. Heckler, 720 F.2d 1086, 1093 n. 18 (9th Cir.1983) (when costs can be claimed, and thus whether costs are reimbursable under Medicare Act, determined by "generally accepted accounting principles").
 
 
 14
 The Secretary next argues that the method of calculating the proper reimbursement for return on equity should be controlled not by the general regulation regarding cost reporting, but rather by the specific regulation regarding return on equity, 42 C.F.R. Sec. 413.157, and therefore any inconsistency between the Secretary's determination and accrual accounting principles is irrelevant. This position would be reasonable if the specific regulation the Secretary cited provided for use of a different accounting method when calculating return on equity or otherwise stated either that the general requirements regarding cost reporting or the provision regarding the accrual accounting method did not apply to such calculations. However, where the specific regulation is silent on the subject, as it is here, the regulation establishing general principles for cost reporting must be deemed applicable. We see no basis for concluding that the general regulation does not apply to the computation of the hospital's return on equity.
 
 
 15
 Finally, the Secretary argues that since return on equity is calculated once a year, it is "conceptually impossible" to include it in the capital for the year it is earned. We disagree. We see no reason, practical or "conceptual", why return-on-equity capital "cannot" be included in the ending capital of the year in which it is earned, but "must" be included instead in the beginning equity capital of the next year.
 
 
 16
 Because the Secretary's interpretation of the Medicare Act is, by his own admission, contrary to the Medicare regulations regarding accrual accounting, because he has given no basis grounded in the Medicare Act or its regulations for this divergence, and because the accrual accounting regulation is, notwithstanding the Secretary's argument, applicable to calculations of return on equity, we affirm the ruling of the district court.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Congress has recently authorized the phasing out of return-on-equity payments between fiscal year 1987 and fiscal year 1990. See 42 U.S.C.A. Sec. 1395ww(g)(2) (Supp.1987)
 
 
 [2]
 In part I of the Manual, section 1220 states that the return on equity capital is excluded from the monthly calculations of change-in-equity-capital. However, it is not the calculation of the monthly change-in-equity figures that is in dispute, but the calculation of the ending equity capital figures
 
 
 [3]
 The Secretary does not contend that this regulation is inconsistent with the Medicare Act or is, for any other reason, invalid