GRAHAM HOSPITAL ASSOCIATION,
Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, and The U.S. Department of Health and Human Services, Defendants.

No. 92–1002.

United States District Court,
C.D. Illinois,
Peoria Division.

Aug. 27, 1993.

Ralph Froehling, Canton, IL, for plaintiff.

Donna Morros Weinstein, Dept. of Health and Human Services, Chicago, IL, Gerard Brost, Asst. U.S. Atty., Peoria, IL, for defendants.

## ORDER

MIHM, Chief Judge.

Pending before the Court is Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is granted and Defendants' Motion for Summary Judgment is denied.

### FACTUAL BACKGROUND

Plaintiff, Graham Hospital Association ("Graham"), participates as a fully qualified provider of hospital services and skilled nursing services under the Federal Health Insurance Program for the Aged and Disabled, ("Medicare Program"). *See* 42 U.S.C. § 1395 *et seq.* The Medicare Program provides certain hospital insurance benefits to enrolled beneficiaries and establishes a reimbursement system through which providers of hospital services ("providers"), including Graham, are reimbursed for the reasonable and necessary costs which they incur in furnishing these services to Medicare beneficiaries pursuant to 42 U.S.C. § 1395x(v)(1)(A).

Hospital providers such as Graham record the allowable costs and expenses incurred for services furnished to Medicare beneficiaries for each fiscal year and submit reports to their respective Medicare Fiscal Intermediary ("Intermediary") pursuant to 42 U.S.C. § 1395h. The Intermediary, in this case Blue Cross and Blue Shield Association/Blue Cross and Blue Shield of Illinois, must determine the proper amount of allowable costs to be reimbursed under the Medicare Program to the provider. A provider may appeal the Intermediary's determination of allowable costs to the Provider Reimbursement Review Board ("PRRB") established under 42 U.S.C. § 1395oo(h).

At the end of calendar year 1986, Graham's long term debt consisted of: (1) First Mortgage Revenue Bonds, Series 1975 ("Series 1975 Bonds"): principal balance of $2,900,000 with interest rates between 6.7% and 8.625% per annum, and (2) Series 1981 Revenue Bonds ("Series 1981 Bonds"): principal balance of $6,525,000 with an interest rate of 14.25% per annum. Both series matured no earlier than 1995. When interest rates declined during the mid–1980's, Graham began to look for a way to relieve its burden of the relatively high rate of interest required by the Series 1981 Bonds. In January 1987, through the Illinois Health Facilities Authority, Graham issued bonds in the amount of $10,595,000 dated January 15, 1987 ("Series 1987 Bonds"). The purpose of the issue was to refund the Series 1975 Bonds on April 1, 1987 and advance refund the Series 1981 Bonds as of July 1, 1991, the call date of that issue. The mechanism Graham used to eliminate the Series 1987 Bonds necessarily included the establishment of an irrevocable trust. The proceeds of the Series 1987 Bonds together with other available funds were used (1) to enable the trustee to purchase direct obligations of the United States sufficient to pay the principal off, the redemption premium, and interest on the Series 1981 and 1975 Bonds until and at their respective redemption dates, (2) provide funds for a debt service reserve fund, and (3)

pay costs related to issuance of the Series 1981 Bonds, refunding the Series 1975 Bonds and advance refunding the Series 1981 Bonds. The 1981 and 1975 bond issues were extinguished and removed from Graham's books and the Series 1987 Bonds were added.

In connection with refinancing, Graham applied Generally Accepted Accounting Principles ("GAAP") and calculated a loss which was reflected as an extraordinary item in 1987, the year of refinancing. The total amount of this "loss" as a result of the advance refunding was $2,576,781. Of that amount, $2,364,769 related to the 1981 Bonds. Graham claimed the loss on defeasance in its 1987 cost report to the Intermediary. The portion of the loss attributed to the 1975 Bonds, $212,012, was allowed by the Intermediary and is not at issue. The recorded loss on the advance refunding for the 1981 Bonds, $2,364,769.33, was comprised of the call premium (2% of $6,525,000, $130,500), unamortized bond expense at $351,778.28, interest expense through the call date (July 1, 1991) $4,096,340.60, less the estimated interest income from the escrow fund investments over the period prior to the call date, $2,213,849.55. The Medicare share of the loss was calculated at $1,250,000. These costs were calculated pursuant to 42 U.S.C. § 1395x(v)(1)(A) which requires the Secretary to promulgate regulations that interpret "reasonable costs" pursuant to "principles generally applied by national organizations." *See also* 42 C.F.R. 413.24(a), which requires that cost data provided by hospitals "must be based on an approved method of cost finding and on the accrual basis of accounting," and 42 C.F.R. § 413.20(a), which requires that "[s]tandardized definitions, accounting, statistics, and reporting practices that are widely accepted in hospital and related fields were followed." Because no statute or regulation directly addresses the treatment of a loss incurred on an advanced refunding, Graham relied on GAAP pursuant to ¶ 8 of Accounting Principles Board ("APB") Opinion No. 26 [1] which states:

*Recognition Currently in Income.* Some accountants believe a difference on refunding is similar to the difference on the other early extinguishments and should be recognized currently in income in the period of the extinguishment. This view holds that the value of the old debt has changed over time and that paying the call rice or current market price is the most favorable way to extinguish the debt. The change in the market value of the debt is caused by a change in the market rate of interest, but the change has not been reflected in the accounts. Therefore, the entire difference is recorded when the specific contract is terminated because it relates to the past periods when the contract was in effect.... When such debt originally issued at par is refunded, few accountants maintain that some portion of past interest should be capitalized and written off over the remaining life of the old debt or over the life of the new debt.

APB Opinion 26 at AR. 253. This paragraph, among others, provided the primary basis for the Board's conclusion that:

A difference between the reacquisition price and the net carrying amount of the extinguished debt should be recognized currently in income of the period of extinguishment as losses or gains and identified as a separate item.... Gains and losses should not be amortized to future periods.

APB Opinion at AR. 256.

### PROCEDURAL BACKGROUND

In response to Graham's fiscal report for 1987, the Intermediary allowed $229,000 of the loss in fiscal year 1987 and applied § 233 of Part 1 of the Provider Reimbursement Manual (HSFA Pub. 15–A) to the remainder transaction. Section 233 required amortization of the remainder of the defeasance loss over the remaining life of the 1981 Bonds. Plaintiff appealed the Intermediary's determination to the PRRB pursuant to 42 U.S.C. § 1395oo(a)(3).

On September 30, 1991, the PRRB reversed the adjustments of the Intermediary, stating that "the entire loss on defeasance

---

1. Adopted over dissent by the American Institute of Certified Public Accountants ("AICPA") in 1972. *See* Administrator's Final Decision, p. 6 (Tr. 7).

should be recorded when the bond contract is terminated, because it relates to the past periods when the bond contract was in effect." The Board noted that its decision was supported by GAAP, as outlined in APB–26 on early extinguishment of debt. The PRRB stated that the loss resulted from the decrease in the market value of the debt. Since this decrease was not recognized periodically, it should be recognized at the time of defeasance similar to the treatment of an asset that it retired prematurely. The PRRB concluded that the Supreme Court's decision in *Thor Power Tool Co. v. Commissioner of Internal Revenue*, 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979) supported its conclusion that, absence a specific regulatory instruction, Medicare Program policy requires that GAAP be followed.

On October 16, 1991, the Deputy Administrator of the Health Care Financing Administration gave notice of his intention to review the PRRB's September 30, 1991 decision. The Secretary's final determination, rendered November 27, 1991, reversed the decision of the PRRB. The Secretary noted that under 42 U.S.C. § 1395f(b), providers of health care services to Medicare beneficiaries are entitled to be reimbursed for the "reasonable cost" of the capital-related component of providing such services. The Secretary acknowledged that the loss claimed by Graham in this case is a capital-related cost which is still reimbursed on a cost basis. "Reasonable cost" is defined in the Social Security Act as:

> The reasonable cost of any services shall be the cost actually incurred, . . . and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs. . . . In prescribing the regulations referred to in the preceding sentence, the *Secretary shall consider*, among other things, *the principles generally applied by national organizations or established prepayment organizations* . . . in computing the amount of payment, to be made by persons other than

the recipients of services, to providers of services on account of services furnished to such recipients by such providers. Such *regulations* may provide for determination of the costs of services on a per diem, per unit, per capita, or other basis, *may provide for using different methods in different circumstances,* may provide for the use of estimates of costs of particular items or services, may provide for the establishment of limits on the direct or indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services to individuals covered. . . . Such regulations shall (i) take into account both direct and indirect costs of providers of services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs, and (ii) provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs provides to be either inadequate or excessive. (Emphasis added).

42 U.S.C. § 1395x(v)(1)(A). In addition to the regulations, the Secretary noted that the Provider Reimbursement Manual ("PRM"), an extensive set of interpretative guidelines, provides more specific detail and clarification of the law and regulations for the determination of "reasonable costs." In the event that there is no law or regulation specifically addressing the Medicare reimbursement policy regarding a particular issue, the Secretary stated that the PRM provides guidance and the proper interpretation and application of program policy.[2]

---

2. This manual provides guidelines and policies to implement Medicare regulations which set forth principles for determining the reasonable cost of provider services furnished under the Health In-

surance for the Aged Act of 1965, as amended. These "Principles of Reimbursement for Provider Costs" have been published in HIRM–1. *The provisions of the law and the regulations are accu-*

With regard to the issue in this case, the Administrator acknowledged that there is no law or regulation which specifically addresses the treatment of a bond refunding transaction for the purpose of computing medicare reimbursement. However, she found that the specific policy outlined in § 233 of the PRM, which was published in May 1983, was effective for all cost reporting periods beginning on or after July 1, 1983. She reasoned that because the refinancing transaction at issue occurred in the fiscal year ending June 30, 1987, § 233 applies. This section, an interpretation of 42 C.F.R. § 413.9, requires the gain or loss on a refunding transaction to be spread over a number of years. Furthermore, the Administrator noted that this policy more accurately reflects the economic reality of a refunding bond issue with respect to the cost of furnishing services to Medicare beneficiaries over time. *See Humana, Inc. v. Heckler,* 758 F.2d 696, 705 n. 68 (D.C.Cir. 1985). *See also Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979) (the needs of a government program are not always consistent with GAAP).

Finally, the Administrator found that the statutory prohibition against cross-subsidization requires that costs recognized in one year but attributable to health services rendered over a number of years be amortized and reimbursed during those years when Medicare beneficiaries used those services. *See Research Medical Center v. Schweiker,* 684 F.2d 599, 603 (8th Cir.1982) (court required capitalization of construction interest over time); *Gosman v. United States,* 573 F.2d 31, 215 Ct.Cl. 617 (1978) (a Court of Claims declined to use GAAP in favor of a

PRM instruction which required the cost of securing mortgage financing to be amortized and reimbursed over the life of the mortgage).

In reaching her decision, the Administrator distinguishes the authority relied upon by the PRRB by noting that *Mercy Hospital v. Sullivan,* No. 90–0024 P, p. 17, 1991 WL 104090 (D.Me., April 25, 1991) and *Baptist Hospital East v. Sullivan,* 767 F.Supp. 139 (W.D.Ky.1991) came down before the publication of § 233 of the PRM. Furthermore, the Administrator disagreed with the PRRB's conclusion that 42 C.F.R. §§ 413.20 and 413.24 required the application of GAAP. The Secretary found that the language in these regulations focused primarily on provider record-keeping requirements rather than the timing for recognition of a cost. Section 413.20 requires only that "providers maintain sufficient financial records and statistical data for proper determination of costs payable under the program." The regulation also indicates that Medicare will accept standardized reporting practices widely accepted in the hospital and related fields and will not require changes in those systems to determine reasonable costs. It provides that the Secretary will "make use" of the data as usually maintained by the Provider, "to arrive at an equitable and proper payment for Medicare beneficiaries." Regarding 42 C.F.R. § 413.24, the Administrator found:

> While this regulation does require reporting of costs on the accrual basis of accounting, it is not authority for the blanket application of GAAP. Reporting revenues and costs on the accrual basis is merely another method of recognition of costs, while GAAP is a far reaching set of financial reporting guidelines which include var-

*rately reflected in this manual, but it does not have the effect of regulations.*

   \*    \*    \*    \*    \*    \*

Rulings are intended to exemplify general manual instructions and do not alter existing policy guidelines. However, they may place more emphasis on a particular program area that has been identified as a problem. *The rulings do not have the force and effect of a statute or regulation, but provide illustrative case material useful in interpreting and applying policies and procedures contained in instructional issuances.*

The procedures and methods set forth in this manual have been derived to accommodate program needs and the administrative needs of pro-

viders and their intermediaries and will assure that the reasonable cost regulations are uniformly applied nationally without regard to where covered services are furnished. The manual contains informational and procedural material on various aspects of the determination of cost and to assist providers in preparing annual cost reports. The provider's intermediary will issue any necessary supplementary instructions as appropriate for local guidance on items relating to cost determinations. *For any cost situation that is not covered by the manual's guidelines and policies, generally accepted accounting principles should be applied.* (Emphasis added).

ious cost recognition options, including the accrual basis of accounting.

(Tr. 13).

Finally, the Administrator discounted APB Opinion # 26, which expressed that an immediate recognition of loss or gain should be the standard practice for treating a loss on refunding. She noted that several members of the AICPA dissented in that opinion and complained that it fails to recognize the economic effects associated with the refunding of the debt. For the reasons stated above, the Administrator reversed the PRRB on November 27, 1991 and ordered Graham to amortize the loss on the advanced refunding at issue in this case in accordance with the PRM, § 233. On January 3, 1992, Graham filed suit in this Court praying for the reversal of the Administrator's decision.

## JURISDICTION

This is an action for judicial review of a final administrative decision of the Secretary pursuant to § 1878(f)(1) of the Social Security Act, as amended, 42 U.S.C. § 1395oo(f)(1). This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1395oo(f)(1) and venue properly lies with this Court on the basis that the Plaintiff's principal place of business is in this judicial district.

## ISSUE

There is no dispute of fact at issue in this case. The sole issue to be determined is whether reimbursement for a loss on bond refinancing should be governed by Generally Accepted Accounting Principles (GAAP) and thus subject to immediate payment by Medicare, or by HCFA policy as expressed in the Provider Reimbursement Manual (PRM), which requires that it be amortized over a period of years. The Court must determine: (1) whether and how the pertinent statute and regulations address bond refinancing, and (2) whether § 233 of the PRM interprets those statutes and regulations or creates substantive law independent of these provisions.

## STANDARD OF REVIEW

■ Pursuant to 42 U.S.C. § 1395oo(f)(1), the Court's review of the Sec-

retary's decision falls within the provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. The Court must determine whether the agency action was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence or otherwise not in accordance with law. 5 U.S.C. §§ 706(2)(A) and (E). This standard of review is highly deferential and presumes the agency action to be valid. *Conservation Law Foundation of New England v. Secretary of the Interior*, 864 F.2d 954, 957–58 (1st Cir. 1989). Although the Court must give considerable weight to the Secretary's interpretation of his own regulations, *McCuin v. Secretary of Health and Human Services*, 817 F.2d 161, 168 (1st Cir.1987), the Secretary's interpretation "must be reasonable in view of the language of the regulations and the policies they were meant to implement." *Id.*, 817 F.2d at 168. When there are conflicting interpretations of the regulations, the Court must try to give comprehensive meaning to all provisions. *Id.* An agency's interpretation of the statute it administers should be upheld if it is based on a "permissible" construction of the language of the statute. *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Agency regulations are to be given controlling weight unless they are "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. at 2782.

## LEGAL DISCUSSION

■ The Court clarifies the issue pending by noting what is *not* at issue. It is not disputed that reimbursement for the bond refinancing is a "reasonable cost" under the statute. 42 U.S.C. § 1395x(v)(1)(A); 42 C.F.R. § 413.9. It is not disputed that this refinancing is reasonably connected to medical services given to beneficiaries of the Medicare program. Therefore, the issue does not involve an analysis of whether this particular cost is reasonable under the statute or whether the treatment of this cost creates problems of cross-subsidization, a practice which is prohibited by 42 C.F.R.

§ 413.9 [3]

The only issue before the Court is whether the Secretary is obligated under relevant statutes and regulations to reimburse Graham for the costs incurred in 1987 in conjunction with the retirement and refinancing of certain bond issues according to GAAP principles in the year the cost was accrued (1987), or in accordance with § 233 of the Agency's Provider Reimbursement Manual, which instructs that advance refunding costs are to be amortized "over the period from the issue date of the refunded debt to the date the holders of the refunded debt will receive the principle payment. . . ." Specifically, the Court must determine whether the statute and regulations alone advocate the application of GAAP, and how § 233 of the PRM coincides with these statutes and regulations.

Plaintiff argues in its Motion for Summary Judgment that § 233 conflicts with the applicable regulations, 42 C.F.R. §§ 413.20, 413.-24, and 413.5, and should therefore be disregarded as invalid. *See HCA Health Services of Midwest, Inc. v. Bowen,* 869 F.2d 1179 (9th Cir.1989); *Florida Group–Indigent Case Tax Assessments–First PPS Year v. Blue Cross and Blue Shield Association/Blue Cross of Florida, Inc. and Mutual of Omaha, PRRB Hearing Dec.,* No. 90–1061, Sept. 20, 1990, ¶ 38,934, CCH Medicare and Medicaid Guide (AR 78–86); *Charlotte Memorial Hospital and Medical Center, Inc. v. Bowen,* 860 F.2d 595 (4th Cir.1988); *Mercy Hospital v. Sullivan,* No. 90–0024 P, p. 17, 1991 WL 104090 (D.Me., April 25, 1991); *National Medical Enterprises v. Bowen,* 851 F.2d 291 (9th Cir.1988); *Ravenswood Hospital Medical Center v. Schweiker,* 622 F.Supp. 338 (N.D.Ill.1985). Plaintiff argues that 42 C.F.R. § 413 clearly indicates that providers are to keep records, prepare reports, and therefore be reimbursed pursuant to the principles of GAAP. *See* 42 C.F.R. § 413.-5(a), (b)(1)(4)(6), (c), § 413.20(a), § 413.24(a), (b)(2), (d); *St. Luke's Hospital v. Secretary of Health and Human Services,* 632 F.Supp.

1387, 1391 (D.Mass.1986), *vacated on other grounds,* 810 F.2d 325 (1st Cir.1987). Therefore, Plaintiff requests that the Court disregard § 233 of the PRM as inconsistent with the regulations and invalid due to lack of compliance with the formal rule-making procedures of the Administrative Procedure Act, 5 U.S.C. § 553.

Defendant argues that 42 C.F.R. § 413 merely advocates the manner in which providers are to create their accounting records and reports. In addition, Defendant argues that § 413.5, the section which arguably addresses the manner in which costs are to be reimbursed, does not state that providers must be reimbursed according to the principles of GAAP. Defendant argues that GAAP only applies absent a specific regulation authorizing a departure from GAAP:

> The Secretary normally follows [GAAP], 42 C.F.R. § 405.406(a) (1979) [now at 42 C.F.R. § 413.20(a) ], but when these practices do not accurately reflect the cost of patient care, as opposed to the cost of running a business, *the Secretary reserves the right to prescribe different accounting practices. See* 41 Fed.Reg. 46,292 (1976).

*North Clackamas Community Hospital v. Harris,* 664 F.2d 701, 706 n. 16 (9th Cir. 1980). The above cited reference to the Federal Register states:

> [GAAP] are applicable to Medicare cost determinations only when a cost situation is not covered by 42 C.F.R. Part 405 [now Part 413] *or the Provider Reimbursement Manual.* It is *only in the absence* of a health insurance program policy that GAAP should be followed.

*See also* the Forward Section to the PRM; *American Medical International, Inc. v. Secretary of Health, Education and Welfare,* 466 F.Supp. 605, 624 n. 21 (D.D.C.1979), *aff'd* 677 F.2d 118 (D.C.Cir.1981). Defendant concedes that this authority appears to be inconsistent with APB Opinion No. 26, articulated by the AICPA in 1972 which advocated the application of GAAP to the *early* extinguishment of debt. The opinion directed that:

> individuals covered by the program will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by the program.

---

**3.** 42 C.F.R. § 413.9(b) states in relation to defining what reasonable costs relate to patient care:

The objective is that under the methods of determining costs, the costs with respect to

[a] difference between the reacquisition price and the net carrying amount of the extinguished debt should be recognized currently in income of the period of extinguishment as losses or gains and identified as a separate item.... Gains and losses should not be amortized to future periods."

APB Opinion 26, p. 20.

The Secretary argues that § 233 of the PRM is an interpretive provision and therefore comes within the exception to the notice and comment requirements of the APA, 5 U.S.C. § 553(b)(3)(A). Furthermore, this provision reflects the Secretary's concern that accrual accounting would not reflect the "economic reality" of the hospital's long-term savings as a result of the transaction, in contrast to the initial loss within the year of refinancing. The Secretary notes that this loss from the change in the hospital's capital structure "did not relate exclusively to patient services rendered in the year of the loss but rather more closely related to the periods over which the original bond term extended." Therefore, according to the Secretary, the application of § 233 is not arbitrary and capricious and contrary to the law.

In the alternative, if the Court should find that § 233 is in fact a substantive rule rather than an interpretative rule, the Secretary argues that § 233 should be considered a rule of law created through individual adjudication rather than through the notice and comment procedures under the APA. *See Mobile Exploration and Producing v. FERC*, 881 F.2d 193, 198 (1989). In the instant case, the Secretary argues that Graham was given the opportunity to present evidence and argument against the application of this rule in an adjudicatory process thereby countering Graham's argument that § 233 is invalid because it is a substantive rule created without notice and comment.

This is a case of first impression in this Circuit. The first and only circuit to address this question is the Sixth Circuit. In *Gurnsey Memorial Hospital v. Secretary of Health and Human Services*, 996 F.2d 830 (6th Cir.1993), the Sixth Circuit held that the "[r]egulations promulgated by the Depart-

ment strongly imply, if they do not say in so many words, that reimbursement will be made on the basis indicated by GAAP." 996 F.2d at 831.[4] The *Gurnsey* court held that the PRM's amortization requirement contained in § 233 effects a substantive change in the regulations and is therefore not an interpretive rule but rather a substantive rule. The Sixth Circuit opined that § 233 is therefore void by reason of the Agency's failure to comply with the Administrative Procedure Act in adopting it. *See* 5 U.S.C. § 553. The Court stated that under 42 U.S.C. § 1395x(v), "[t]he reasonable cost of any services shall be the cost actually incurred ... and shall be determined in accordance with regulations establishing the method or methods to be used...." The Sixth Circuit interpreted the "principles generally applied by national organizations," which the Secretary is required to consider in prescribing the regulations under § 1395x(v), as generally accepted accounting principles or GAAP. The Court also relied upon 42 C.F.R. § 413.20, under which generally accepted accounting principles are followed:

> The principles of cost reimbursement require that providers maintain sufficient financial records and statistical data for proper determination of costs payable under the program. Standardized definitions, accounting, statistics, and reporting practices that are widely accepted in the hospital and related fields are followed. Changes in these practices and systems will not be required in order to determine costs payable under the principles of reimbursement....

996 F.2d at 833, *citing* 42 C.F.R. § 413.20(a). Furthermore, the court noted that under § 413.24, "[t]he cost data must be based on an approved method of cost finding and on the accrual basis of accounting." The Court found:

> In general terms, the introduction to part 413 explains, "the methods of reimbursement should result in current payment so that institutions will not be disadvantaged, as they sometimes are under other arrangements, by having to put up money

4. The Fifth Circuit is currently considering an appeal from the district court's decision in

*Mother Frances Hospital of Tyler, Texas v. Shalala*, 818 F.Supp. 990 (E.D.Tex.1993).

for the purchase of goods and services well before they receive reimbursement."

*Gurnsey,* 996 F.2d at 833–34. In contrast to these statutory provisions and regulations, the Sixth Circuit held that § 233 of the PRM calls for a departure from GAAP:

> When a provider defeases or repurchases debt incurred for necessary patient care through an advance refunding, ... [u]namortized discounts or premiums (reduction of debt cancellation costs) and debt issue costs of the refunded debt must be amortized over a period from the issue date of the refunding debt to the debt the holders of the refunded debt will receive the principal payment ... The effect of the above treatment is to implicitly recognize any gain or loss incurred as the result of an advance refunding over the period from the date the refunding debt is issued to the date the holders of the refunded debt received the principal payment, rather than immediately.

Providers Reimbursement Manual, § 233. While the Court conceded that this provision may have a rational basis, it held that the fact that § 233 worked a substantive change in existing regulations without having been through the formal rule-making process pursuant to 5 U.S.C. § 553 rendered the provision invalid. *See Gurnsey,* 996 F.2d at 834, *citing State of Ohio Department of Human Services v. U.S. Department of Health and Human Services,* 862 F.2d 1228, 1233–37 (6th Cir.1988); *National Medical Enterprises v. Bowen,* 851 F.2d 291, 293 (9th Cir.1988) (PRM interpretations hostile to accrual accounting regulations will not be enforced since regulation and not PRM has force of law); *Vista Hill Foundation, Inc. v. Heckler,* 767 F.2d 556, 559–60 (9th Cir.1985) (court will defer to Secretary's interpretations only when consistent with statute and regulations); *Fairfax Nursing Center, Inc. v. Califano,* 590 F.2d 1297, 1301 (4th Cir.1979) (secretary may not promulgate regulations and then change their meanings by interpretations or clarifications without formal notice or comment); *Mercy Hospital v. Sullivan,* No. 90–0024 P, p. 17, 1991 WL 104090 (D.Me., April 25, 1991). The Sixth Circuit held that § 233 of the Providers Reimburse-

ment Manual "impermissibly changes the meaning of validly adopted regulations." 996 F.2d at 835, *citing Baptist Hospital East v. Sullivan,* 767 F.Supp. 139 (W.D.Ken.1991); *Ravenswood Hospital Medical Center v. Schweiker,* 622 F.Supp. 338 (N.D.Ill.1985), *but see Mother Frances Hospital of Tyler, Texas v. Shalala,* 818 F.Supp. 990 (E.D.Tex. 1993).

The Sixth Circuit rejected the Secretary's argument that the regulations deal only with the manner in which the hospital is to report its advanced refunding costs:

> The whole purpose of Part 413, as the introduction to that Part explains, is to "set [forth] regulations governing Medicare payment" for services furnished, on a cost reimbursable basis, by hospitals and similar health care providers.

996 F.2d at 835, *citing* 42 C.F.R. § 413.1(a). The Sixth Circuit also relied on a Provider Reimbursement Review Board decision in another case which came down on July 13, 1992 subsequent to the district court's issuance of its opinion in *Gurnsey.* In *Fort Worth Osteopathic Medical Center v. Blue Cross & Blue Shield Association,* Board Decision No. 90–0543, the Board rejected the view that "42 C.F.R. § 413.20 pertain[s] only to record-keeping requirements and not to reimbursement." Slip op. at 15. The Board specifically commented on the district court's holding in *Gurnsey* and disagreed with it:

> In finding that 42 C.R.F. § 413.20 deals with record-keeping requirements and not reimbursement, the *Gurnsey* court apparently concludes that the Medicare program has certain requirements for record keeping and totally different requirements for reimbursement. The majority of the Board believes that the court's analysis fails to take into consideration the nexus between cost reporting and cost reimbursement.
>
> \*   \*   \*   \*   \*   \*
>
> The majority of the Board believes that the purpose of cost reporting is to enable a hospital's costs to be known so that its reimbursement can be calculated. For that reason, there must be some consistency between the fundamental principles of

cost reporting and those principles used for cost reimbursement.

\* \* \* \* \* \*

... 42 C.F.R. § 413.24 requires that cost data submitted must be based on the accrual basis of accounting which is recognized as the most accurate basis for determining costs. Under the accrual basis of accounting, expenses are to be reported in the period in which they are incurred, regardless of when paid.

996 F.2d at 835–36, *citing Fort Worth Osteopathic Medical Center,* Slip Op. at 16.

The specific legal question addressed in *Gurnsey* and the facts to which it applied are on all fours with the instant case. As in *Gurnsey,* the facts in Graham Hospital Association involve advance refunding of bond issues which created undisputed reasonable costs incurred in connection with providing Medicare service pursuant to 42 U.S.C. § 1395x(v). As in *Gurnsey,* the instant case requires the interpretation of the current statute and regulations regarding the method of accounting to be applied to cost reimbursements in conjunction with § 233 of the PRM. This Court agrees with the Sixth Circuit in its assessment that 42 C.F.R. Part 413 establishes a cost reimbursement policy consistent with GAAP, with which § 233 conflicts. Therefore, § 233 cannot be viewed as an interpretative rule which clarifies that policy. *See* 1972 AICPA APB Opinion No. 26 (AR 250–59).

The Secretary relies upon the district court's opinion in *Mother Frances Hospital,* 818 F.Supp. 990 (E.D.Tex.1993), which in turn relies on the holding in *Sun Towers, Inc. v. Heckler,* 725 F.2d 315, 328–29 (5th Cir.1984) in which the Fifth Circuit held that 42 C.F.R. § 405.406(a) [the precursor to § 413.20(a) ]:

only provides that accepted accounting principles be used in uniform record keeping, *not in determining costs allowable under the Medicare Act.* The regulation is directed at the type of financial data and reports required of providers; it is not a regulation effecting the substantive provisions of the program as to what constitutes reimbursable costs. (Emphasis added).

*Id.* at 328–329; *see also National Medical Enterprises, Inc. v. Sullivan,* 916 F.2d 542, 547 (9th Cir.1990). This Court agrees that 42 C.F.R. §§ 413.20 and 413.24 do not address what costs are allowable under the Act. This question is more appropriately addressed by 42 C.F.R. § 413.9. These sections do, however, advocate a policy by which providers create and maintain their accounting records and reports for the purpose of cost reimbursement under the principles of GAAP. *See also* 42 C.F.R. § 413.5, 42 U.S.C. § 1395x(v)(1)(A), APB Opinion No. 26.

Additionally, the Secretary argues that PRM § 233 does not contravene the requirement for accrual accounting in 42 C.F.R. § 413.24. In the instant case, Graham's financial reports indicate that the refinancing cost was "an extraordinary loss." Under the principles of accrual accounting, the Secretary argues that it is not atypical to amortize an extraordinary loss over a period of years to more closely match costs with revenues or services. *See INDOPCO, Inc. v. Commissioner of Internal Revenue,* —— U.S. ——, —— – ——, 112 S.Ct. 1039, 1042–43 (1992) ("while business expenditures are currently deductible, a capital expenditure usually is amortized and depreciated over the life of the relevant asset ..."); *see also Spartanburg General Hospital v. Heckler,* 607 F.Supp. 635, 641 (D.S.C.1985). While this practice may be reconcilable with certain principles of GAAP in other factual circumstances not analogous with this case, it cannot be reconciled with the regulatory language relevant to the facts in this case. *See* 42 C.F.R. § 413.5, which indicates that "payment is to be made on the basis of *current costs* of the individual provider" (emphasis added), and 42 C.F.R. § 413.24(b)(2), which states that "expenses are reported in the period in which they are incurred ..." under an accrual basis of accounting. This Court concurs with the Sixth Circuit in its conclusion that the practice and policy advocated by § 233 may very well have a rational basis. That does not change the fact that, if applied, it has the effect of a substantive regulation or a "legislative rule" without ratification through the APA, 5 U.S.C. § 553.

An interpretive rule simply states what the administrative agency thinks the [underlying] statute means and only reminds affected parties of existing duties. On the other hand, *if by its action the agency intends to create new laws, rights, or duties, the rule is properly considered to be a legislative rule.* (Emphasis added). *Metropolitan School District of Wayne Township, Marion County, Indiana v. Davila,* 969 F.2d 485, 489 (7th Cir.1992), *quoting United Technologies Corp. v. United States Environmental Protection Agency,* 821 F.2d 714, 718 (D.C.Cir.1987). The Court finds that § 233 establishes new rights and/or duties pertaining to cost reimbursements not previously articulated in, and contrary to, the accounting principles advocated by the pertinent statute and regulations.

■ The Court rejects the Secretary's alternative argument that § 233 is a substantive rule properly created through individual adjudication rather than notice and comment procedures under 5 U.S.C. § 553. *Mobil Exploration and Producing v. FERC,* 881 F.2d 193, 198 (5th Cir.1989). *Mobil Exploration* involves FERC's discretion to establish rules of general application in either a statutory rule-making procedure or an individual adjudication in the context of creating regulations pertaining to leasehold interest in gas producing property for the purposes of exploration and exploitation. "Adjudication can be used to announce new principles even if the principles involve a change from past policies." 881 F.2d at 198. The Court finds that this case is factually distinct. Formal adjudication procedures in place at FERC are not analogous to the implementation of a provision in the Provider Reimbursement Manual in the context of determining cost reimbursement policy under the Medicare Act.

■ The Court adopts the Sixth Circuit's holding in *Gurnsey* and finds that § 233 is invalid. It is a provision which alters the substantive rights and duties of providers, which are currently articulated in 42 U.S.C. § 1395x(v), and the corresponding regulations in 42 C.F.R. § 413. Without § 233, it is clear that the Administrator erred in reversing the PRRB's decision that the record-

ed loss pertaining to the bond refinancing in 1987 should be reimbursed in full according to GAAP principles in the year the loss occurred. Therefore, the Administrator's decision is REVERSED and the case is REMANDED to the Secretary for further proceedings in accordance with this Court's findings. The Secretary is directed to recognize the expense recorded in 1987 pursuant to the refinancing of the bonds as reimbursable in full in the year reported.

### CONCLUSION

For the reason set forth above, Plaintiff's Motion for Summary Judgment is GRANTED; Defendant's Motion for Summary Judgment is DENIED and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is ordered to enter judgment in this case.