HCA HEALTH SERVICES OF MIDWEST, INC., dba Doctors Hospital and Chicago Lakeshore Hospital; Health Services Acquisition Corporation, as successor to Sacramento Community Hospital, Inc., dba Community Hospital of Sacramento; Health Services Acquisition Corporation, dba Community of Gardena St. Augustine General Hospital, Encino Hospitals and Costa Mesa Hospital; Health Services Acquisition Corporation, as successor to Centre City Hospital Inc., dba Centre City Hospital et al., Plaintiffs–Appellants,

v.

Otis R. BOWEN, M.D., Secretary of Health & Human Services, Defendant–Appellee.

No. 88–5601.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1989.

Memorandum Jan. 23, 1989.

Opinion March 13, 1989.

Robert A. Klein, Anita D. Lee, Weissburg & Aronson, Inc., Los Angeles, Cal., for plaintiffs-appellants.

John R. Bolton, Asst. Atty. Gen., Civ. Div., Anthony J. Steinmeyer, Asst. Branch Director, Appellate Staff, Civ. Div., and (on the brief), Dina R. Lassow, Trial Atty., Federal Programs Branch, Civ. Div., Merril Hirsh, U.S. Dept. of Justice, Trial Atty., Federal Programs Branch, Civ. Div., Washington, D.C., for defendant-appellee.

Before WALLACE, CANBY, and TROTT, Circuit Judges.

CANBY, Circuit Judge:

Appellants are acute care hospitals that provide services to Medicare patients. The hospitals are seeking to overturn the decision of the Secretary of Health and Human Services, the agency in charge of administering the Medicare program, refusing reimbursement for certain claimed costs for the years 1980 and 1981. During these years the Medicare Act mandated that hospitals and other Part A providers (such as extended care facilities, and home health services) be reimbursed by the program for the "reasonable cost" of rendering covered services to eligible beneficiaries, 42 U.S.C. § 1395f(b). "Reasonable cost" was defined as "the cost actually incurred ...", 42 U.S.C. § 1395x(v)(1)(A).[1]

The hospitals sought reimbursement for $1,857,257 in costs generated by employees' exercising stock options during 1980 and 1981. The hospitals claimed these costs as employee compensation and sought reimbursement by Medicare based on the proportion of their total patients who are eligible for Medicare.

The Secretary refused reimbursement[2] on the ground that under "generally accepted accounting principles" (which the Secretary is mandated to apply where an issue has not been covered by agency regulations, 42 C.F.R. § 405.405), there were no reasonable costs incurred. This decision was affirmed by the Provider Reimbursement Review Board (PRRB), and was left standing by the Secretary. The hospitals sought review in district court, which granted summary judgment to the Secretary. This court has jurisdiction under 28 U.S.C. § 1291. We affirm.

We review de novo a district court's award of summary judgment affirming a decision of the Secretary over a Medicare Reimbursement matter. *Vallejo General Hospital v. Bowen*, 851 F.2d 229, 231 (9th Cir.1988). In reviewing the Secretary's final decision (which in this case is that of the Review Board), we are limited to determining whether the Secretary's action was "arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence on the record taken as a whole". *Id.* (citation omitted); *see* 42 U.S.C. § 1395oo (incorporating by reference the judicial review provisions of the Administrative Procedure Act codified at 5 U.S.C. Chapter 7). An agency's decision can be upheld only upon a ground on which it relied in reaching that

1. The law was changed as of October 1, 1983. Following that date, reimbursable costs are determined by a prospective formula setting specific rates determined by the patient's diagnosis.

2. Claims for hospitals and other institutional providers are reviewed by "fiscal intermediaries" under contract with the Secretary to evaluate the validity of the claims. The decision of the intermediary is the preliminary decision of the Secretary. If a provider objects to the reimbursement provided, an appeal may be had to the Provider Reimbursement Review Board, 42 U.S.C. § 1395oo. Unless the Secretary reverses or modifies the PRRB decision within 60 days from the date the provider is notified, it becomes the final decision of the agency subject to review by a district court, 42 U.S.C. 1395oo (f).

decision. *Vista Hill Foundation, Inc. v. Heckler,* 767 F.2d 556, 559 (9th Cir.1985) (citation omitted); *see also Mercy Hospital & Medical Center, San Diego v. Harris,* 625 F.2d 905, 906 n. 2 (9th Cir.1980) (district court's reasoning for upholding Secretary's decision dictum because Secretary's decision rested on different ground). The district court's reasoning thus is not the subject of our review.

The hospitals' major contention is that the Secretary's application of "generally accepted accounting principles" in this case undermines the intent of the statute itself to provide reimbursement for actual costs incurred. The parties are in agreement that stock option costs may be reimbursed as "reasonable costs," but they dispute how and when these costs are to be evaluated. In the absence of any Medicare regulations on employee stock option plans, the Review Board followed generally accepted accounting principles in accordance with 42 C.F.R. 405.405.[3]

Both parties agree that in the absence of any promulgated regulations on this subject, the Secretary was correct to apply "generally accepted accounting principles. The hospitals, however, disagree with the Secretary's view that the generally accepted accounting principles method for measuring stock option costs is that stated in *Accounting for Stock Issue to Employees,* Accounting Principles Board Opinion No. 25 (Accounting Principles Bd. 1972) (hereinafter APB No. 25). Under this method, the cost of a "fixed" option plan of the sort at bar (i.e., one where the price and the number of shares available under the offer is clear from the time the option is granted) is measured from the date at which "(1) the number of shares that an individual employee is entitled to receive and (2) the option or purchase price, if any" are known. APB No. 25, § 10b. Because the hospitals' "fixed" option plans met both these criteria from the date they were granted, the Secretary measured the hospitals' costs as the costs on the grant date. Because the options were offered at a price at or above the market price, this method yielded a cost of zero.

The hospitals contend that they experienced a real economic cost at the time the options were exercised. While agreeing that APB No. 25 points to the grant date, the hospitals argue that this opinion deals with how stock option costs are to be reported on a corporation's income and expense statement. The hospitals argue that a second generally accepted accounting principle exists which addresses the preparation of a corporation's balance sheet. They contend that the full cost of fixed stock options is "reflected" on the corporation's balance sheet at the time the option is exercised, because the balance sheet will then reflect as paid-in capital the option price, instead of the full market price the stock was worth at the exercise date.

Under Medicare regulations the reimbursement of costs is to be based on the "accrual basis ... of accounting," 42 C.F.R. § 405.453(b)(2). Accordingly, expenses must be reported in the period in which they are incurred regardless of when they are paid. Thus the reimbursable costs of the hospitals' stock options were the costs measured on the date the options were granted; by the generally accepted accounting principles method employed by the Secretary the reimbursable cost was zero.[4]

---

3. "Generally accepted accounting principles consist of the official publications of the American Institute of Certified Public Accountants (i.e. opinions of the Accounting Principles Board, Financial Accounting Standards Board Statements, and Accounting Research bulletins). Where there is no official publication, the consensus of the accounting profession, as manifested for example in textbooks, determines generally accepted accounting principles." *Spokane Valley General Hospital, Inc. v. United States,* 688 F.2d 771, 776 n. 4, 231 Ct.Cl. 550 (1982) (citation omitted).

4. The PRRB found that the providers' cost claims did not comply with the accrual method of accounting under 42 C.F.R. 405.453(a) & (b), and the requirement that the costs be related to the care of beneficiaries under 42 C.F.R. 405.-451(c)(3). These findings flow from the decision to apply APB No. 25 as the appropriate GAAP principle. Under that method the cost is zero.

The hospitals maintain that the Secretary acted arbitrarily in applying APB No. 25 to the analysis of their actual costs incurred due to the stock option plans at issue. "[W]here the Secretary has not prescribed different accounting practices by regulation, the Secretary must apply generally accepted accounting principles to determine whether a particular cost claimed by a provider is reimbursable under the Medicare Act." *Villa View Community Hospital, Inc. v. Heckler,* 720 F.2d 1086, 1093 n. 18 (9th Cir.1983); *see also, National Medical Enterprises v. Bowen,* 851 F.2d 291, 294 (9th Cir.1988).

While the hospitals assert that generally accepted accounting principles exist which would provide an alternative to APB No. 25, they have failed to document such a principle.[5] Nor have they established that APB No. 25 fails to supply a reasonable basis for the Secretary's decision. The hospitals contend that APB No. 25 is arbitrary because it does not allow reimbursement at the time of exercise for the fixed stock option plans at issue here, but does permit such reimbursement for other types of plans. While APB No. 25 does make this distinction, that fact does not render the treatment of fixed plans arbitrary. APB No. 25 incorporates by reference *Compensation Involved in Stock Option and Stock Purchase Plans,* Accounting Research Bulletin No. 43 (1953) (ARB No. 43). That document offers reasons for refusing to regard costs attributable to the exercise of fixed plan options as costs of "services".

"[B]eginning with the time at which the grantee may first exercise the option he is in effect speculating for his own account. His delay has no discernible relation to his status as an employee but reflects only his judgment as an investor."
ARB No. 43 ¶ 8.

Not all accountants agree with this logic. The hospitals presented expert testimony that this method is illogical. But APB No. 25 remains the authoritative pronouncement of the accounting profession on the measurement of costs associated with employee stock option plans. It is supported by rational considerations. We cannot conclude that the Secretary acted arbitrarily in applying it.[6] The judgment of the District Court is

AFFIRMED.

5. Their expert witness while taking issue with the logic of APB No. 25 nonetheless agreed that it was the leading authority on the accounting of stock options [Supplemental Excerpt of Record at 24–25].

6. The hospitals also cite several tax cases which find that the exercise of stock options under plans comparable to the ones at bar do generate actual economic costs. *Luckman v. Commis*

*sioner of Internal Revenue,* 418 F.2d 381, 384 (7th Cir.1969), *Divine v. Commissioner of Internal Revenue,* 500 F.2d 1041 (2d Cir.1974), *Commissioner of Internal Revenue v. LoBue,* 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956). That costs are cognizable for certain tax purposes does not, however, require their recognition by the Secretary for the wholly different purposes of Medicare reimbursement.