57 F.3d 832
 48 Soc.Sec.Rep.Ser. 195, 19 Employee Benefits
Cas. 1824,
Medicare & Medicaid Guide P 43,401
DOMINGUEZ VALLEY HOSPITAL; Ontario Community Hospital;
Ojai Community Hospital; Manteca Hospital; Doctors
Hospital of Lakewood; Los Alamitos Medical Center, Los
Alamitos Medical Center--Psych; Chico Community Hospital;
Memorial Hospital of Redding, Redding Medical Center,
Redding Medical Center--Rehabilitation, Redding Medical
Center--Detox; Modesto City Hospital; Garfield Medical
Center--Rehabilitation; Lodi Community Hospital; Doctors
Hospital--Modesto; Doctors Hospital--Modesto HHA; Doctors
Hospital of Pinole; Doctors Hospital of Pinole--Detox;
Indio Community Hospital; Los Altos Hospital; Doctors
Hospital of Lakewood--South; Alvarado Community Hospital;
Doctors Hospital of Montclair; Twin Cities Community
Hospital; Palms of Pasadena Hospital; John F. Kennedy
Memorial Hospital; Lake Seminole Hospital; Hollywood
Medical Center; Seven Rivers Community Hospital; Medfield
Center; Sierra Medical Center; Meadowcrest Hospital; St.
Charles General Hospital; Rehabilitation Institute of
Oklahoma; Jackson Specialty Hospital/SNF; Wilmot
Psychiatric/Medicenter, Tucson; San Diego Physicians &
Surgeons; Mid-South Hospital; Highland Hospital; Dallas
Rehabilitation Institute; Northgate General Hospital;
Community Hospital of Los Gatos; Delray Community Hospital;
Forkosh Memorial Hospital; Flint Goodridge Hospital; J.E.
Smith/F.E. Hebert Hospitals/SNF; Dedman Medical
Center/Brookhaven/SNF; Placentia Linda Community Hospital;
Carrollton Community Hospital; University Medical Center,
Plaintiffs-Appellants,
v.
Donna E. SHALALA, Secretary of the Department of Health &
Human Services, Defendant-Appellee.
 No. 94-55182.
 United States Court of Appeals,
Ninth Circuit.
 Submitted May 9, 1995*.
Decided June 14, 1995.
 
 1
 Patric Hooper, Hooper, Lundy & Bookman, Los Angeles, CA, for plaintiffs-appellants.
 
 
 2
 Henry A. Azar, Jr., U.S. Dept. of Justice, Washington, DC, for defendant-appellee.
 
 
 3
 Appeal from the United States District Court for the Central District of California.
 
 
 4
 Before: HALL, LEAVY, Circuit Judges, and LEVI, District Judge.**
 
 LEVI, District Judge:
 
 5
 Appellant hospitals appeal from a decision of the Secretary of Health and Human Services ("the Secretary") declining to reimburse the hospitals for stock options granted to certain employees. The hospitals participate in the Medicare program and seek reimbursement from the Secretary under that program. The Secretary refused reimbursement for the stock options, finding that under generally accepted accounting principles ("GAAP"),[1] the hospitals had not incurred any costs.[2] The district court affirmed the Secretary's decision, granting the secretary's motion for summary judgment. We review the Secretary's final decision to determine "whether the agency action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' "[3] We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 6
 In the fiscal years 1980 through 1984, appellant hospitals granted stock options to certain top managerial employees.[4] The stock options were "fixed" options; they gave recipients the right to purchase a specific number of shares at a fixed price. The fixed price for a given employee's option was the market price of the stock on the date that the option was initially granted. The option became fully vested three years after the grant date; the right to exercise the option lasted until ten years after that date.
 
 
 7
 The hospitals seek reimbursement for the costs of their employee stock options under the Medicare Act, which provides for reimbursement of the "reasonable cost"--defined as "the cost actually incurred"--in rendering covered services to Medicare patients. 42 U.S.C. Secs. 1395f(b), 1395x(v)(1)(A).[5] The Secretary denied the hospitals' reimbursement request, finding that under Accounting Principles Board Opinion No. 25 (Accounting Principles Bd.1972) ("APB No. 25"), the hospitals incurred no costs because the exercise price of each option was the stock's market price on the grant date. The hospitals contend that the Secretary's decision to apply APB No. 25 to value their stock options was arbitrary and capricious. In accord with our decision in HCA Health Services of Midwest, Inc. v. Bowen, 869 F.2d 1179 (9th Cir.1989), we affirm the Secretary's decision.
 
 
 8
 In HCA the secretary applied generally accepted accounting principles to find that under the accrual basis of accounting mandated by the regulations, employee stock options are to be valued not on the date of exercise, but on the date of grant. We held that the Secretary reasonably followed APB No. 25, which, we noted, is "the authoritative pronouncement of the accounting profession on the measurement associated with employee stock option plans," id. at 1182. HCA affirmed the Secretary's finding that at the time the hospitals granted the stock options, they incurred no costs, because under APB No. 25 fixed options offered at or above market price yield a cost of zero. Id. at 1181-82 & n. 4.
 
 
 9
 While our decision in HCA would seem to definitively resolve the question of whether the Secretary reasonably may apply APB No. 25 to value the cost of fixed employee stock options, appellant hospitals contend otherwise. They concede that the stock options at issue in the present case are indistinguishable from those considered in HCA, but they argue that in HCA the court was not required to resolve whether GAAP applied because the parties agreed that it did. Instead, the hospitals argue that GAAP may be applied only to determine issues of "timing," but not issues of "allowability." They argue that their claimed reimbursement costs must be allowed because they are claims for "fringe benefits," which are expressly allowed by the regulations. Finally, the hospitals argue that instead of applying APB No. 25, the Secretary must apply the "Black-Scholes method" to calculate the value of their stock option plans. Under this method, which relies on six factors to assign a value to a stock option at the date of its grant, the hospitals claim that they incurred actual costs of approximately thirty-three million dollars, less a nine percent discount.[6]
 
 
 10
 The hospitals' attempts to distinguish or limit HCA are unavailing. To begin with, there is no issue in this case as to whether stock option plans may create reimbursable costs. The Secretary concedes that health care providers' employee stock option costs are allowable fringe benefits[7] and would agree that if the stock options had an exercise price less than the market price on the date they were granted, the options would have generated reimbursable costs. Rather, the question presented is whether APB No. 25 is appropriately relied upon to define and value the cost of the options. None of the Secretary's regulations or interpretive guidelines answers this question. The fringe benefit regulations and guidelines do not dictate a particular method of valuing cost. Because the Secretary's regulations and interpretive guidelines are silent on the issue of stock option valuation, the Secretary applied GAAP in the form of APB No. 25 to make this determination.
 
 
 11
 Appellant hospitals argue that cases from this and other circuits suggest that while the Secretary must use GAAP to determine accounting issues related to "timing," the Secretary may not use GAAP to determine issues of "allowability," that is, whether certain costs are reimbursable at all. This proposed distinction is of no assistance here, and we reject it in any event. First, the distinction has no bearing on this case. As stated previously, the issue in this case is one of valuation, not one of allowability. Second, even could the issue be characterized as one of allowability, no reported decision of this court or any other federal court requires the Secretary to depart from GAAP to determine allowability in the absence of an applicable Medicare regulation.[8] We have previously held that the Secretary may not depart from GAAP when her departure is inconsistent with Medicare regulations,[9] and we have held that the Secretary may depart from GAAP when she finds that GAAP does not accurately reflect the cost of patient care.[10] But we have never held that the Secretary may not use GAAP to determine issues of allowability. Indeed, we have held to the contrary. See Villa View, 720 F.2d at 1093.[11]
 
 
 12
 Finally, the Secretary's decision to use APB No. 25 instead of the "Black-Scholes method" to value the cost of the options was not an abuse of discretion. The hospitals' argument that by using APB No. 25 to value the stock options the Secretary arbitrarily ignored the "real economic costs" involved in granting the options is foreclosed by our decision in HCA, in which we expressly rejected the same argument. HCA, 869 F.2d at 1181-82 & n. 6. Because we have previously held that the valuation method selected by the Secretary, APB No. 25, is supported by rational considerations sufficient to provide a reasonable basis for its use, see HCA, 869 F.2d at 1182, the Secretary's decision to refuse to use the hospitals' alternative valuation method and to deny reimbursement for the stock options at issue in this case must be affirmed.[12]
 
 
 13
 For the above stated reasons, the judgment of the district court is
 
 
 14
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 Honorable David F. Levi, United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 Generally accepted accounting principles consist of the official publications of the American Institute of Certified Public Accountants, including Accounting Principles Board opinions and Financial Accounting Standards Board Statements, or, where there is no official pronouncement, the consensus of the accounting profession as manifested in other sources. See Providence Hosp. v. Shalala, 52 F.3d 213, 219 n. 7 (9th Cir.1995)
 
 
 [2]
 The claim was first disallowed by the "fiscal intermediary," which makes initial reimbursement decisions under contract with the Secretary. See 42 U.S.C. Sec. 1395h. The hospitals appealed to the Provider Reimbursement Review Board ("PRRB"), which, after a hearing, upheld the fiscal intermediary's decision. Because the Secretary declined to review the PRRB's decision, the PRRB's decision became the final agency decision subject to district court review. 42 U.S.C. Sec. 1395oo (f)
 
 
 [3]
 Providence Hosp., 52 F.3d at 216 (quoting Administrative Procedure Act standard of review, 5 U.S.C. Sec. 706(2)(A), incorporated by reference into the Medicare Act by 42 U.S.C. Sec. 1395oo (f)(1))
 
 
 [4]
 Plaintiff hospitals are owned by National Medical Enterprises, Inc. ("NME"). The stock option plans at issue were approved by NME's board and shareholders and involved the purchase of NME stock
 
 
 [5]
 The parties agree that the prospective payment system enacted on October 1, 1983, see 42 U.S.C. Sec. 1395ww, does not apply to the options at issue in this case
 
 
 [6]
 The hospitals' expert testified that the six factors used in the Black-Scholes calculation are: (1) the current market price the stock; (2) the exercise price of the option; (3) the time period of the option; (4) the dividend yield on the stock; (5) the volatility of the rate of return of the stock; and (6) the risk-free interest rate. Admin.R. 155-56. The nine percent discount accounts for the possibility of optionees leaving their positions before being able to exercise their options. Admin.R. 165. The expert admitted that he should have further reduced his estimate by approximately one-and-a-half percent per year to account for the nontransferability of the options. Admin.R. 186-87
 
 
 [7]
 See 42 C.F.R. Sec. 413.5(c)(7) and Provider Reimbursement Manual ("PRM") Sec. 2144
 
 
 [8]
 Although one appellate case, Mother Frances Hosp. v. Shalala, 15 F.3d 423, 427 (5th Cir.1994), supports a distinction between "allowability" and "timing" issues with respect to GAAP, that decision has been vacated by the Supreme Court because it adopted the Sixth Circuit decision now overruled by Shalala v. Guernsey Memorial Hosp., --- U.S. ----, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995). See Shalala v. Mother Frances Hosp., --- U.S. ----, 115 S.Ct. 1350, 131 L.Ed.2d 209 (1995) (granting certiorari and vacating judgment). In any event, Mother Frances is unhelpful to appellants, because the "allowability" case it distinguished, Sun Towers, Inc. v. Heckler, 725 F.2d 315, 328-30 (5th Cir.1984), cert. denied, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984), held not that the Secretary was required to depart from GAAP, but merely that the Secretary could depart from GAAP where the departure was reasonable
 
 
 [9]
 See National Medical Enterprises, Inc. v. Bowen, 851 F.2d 291, 293-94 (9th Cir.1988) (requiring Secretary to use GAAP to allocate return-on-equity payments where Secretary's calculation violated regulations regarding accrual accounting); Villa View Community Hosp. v. Heckler, 720 F.2d 1086, 1093 & n. 18 (9th Cir.1983) (requiring Secretary to comply with GAAP and recognize amortization of land use costs). As we recognized in Providence Hosp., 52 F.3d at 219, our statement in Villa View that "where the Secretary has not prescribed different accounting practices by regulation, the Secretary must apply generally accepted accounting principles," 720 F.2d at 1093 n. 18, was recently limited by the Supreme Court's holding that the Secretary may deviate from GAAP even without enacting a specific regulation. Shalala v. Guernsey Memorial Hosp., --- U.S. ----, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995)
 
 
 [10]
 See Providence Hosp., 52 F.3d at 218-19 (Secretary could depart from GAAP and disallow use of "blended" interest rate to prevent impermissible cross-subsidization); National Medical Enterprises, Inc. v. Sullivan, 916 F.2d 542, 547 (9th Cir.1990) (Secretary could depart from GAAP to deny reimbursement for stock maintenance costs), cert. denied, 500 U.S. 917, 111 S.Ct. 2014, 114 L.Ed.2d 100 (1991)
 
 
 [11]
 Villa View involved issues of both allowability and timing, and indeed illustrates the unimportance of the proposed distinction
 
 
 [12]
 The reasonableness of the Secretary's decision to use APB No. 25 is illustrated by the fact that, in accordance with that accounting rule, the hospitals themselves failed to include the costs of the stock options in their own financial statements. Moreover, the hospitals have cited no Medicare policy rationale suggesting that the Secretary should treat employee stock options granted by hospitals differently from the way that GAAP treats stock options granted by other businesses